UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ADAM GUIDRY,<br>　*Plaintiff*<br><br>v.<br><br>ANTHONY G. BUZBEE and<br>ANTHONY G. BUZBEE LP<br>(d/b/a THE BUZBEE LAW FIRM) and,<br>JOHN DOES 1-10<br>　*Defendants* | Civ. Action No.: 2:24-cv-02873<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Adam Guidry, by and through undersigned counsel, files this Complaint against Defendants Anthony G. Buzbee ("Tony Buzbee"), Anthony G. Buzbee LP (d/b/a The Buzbee Law Firm) ("The Buzbee Law Firm") (collectively, "Buzbee" or "Buzbee Defendants") and JOHN DOES 1-10.

### INTRODUCTION

1. Tony Buzbee and The Buzbee Law Firm represented Adam Guidry, a U.S. Coast Guard-licensed ship captain who was severely injured on the job. The Buzbee Defendants told Guidry his case was worth $1 million, but later coerced him into settling for less than one-third of that amount. In insisting that he settle, Buzbee Defendants never explained Guidry's options, never discussed the pros and cons of trial versus settlement, never disclosed mounting expenses, and never disclosed the meager amount Guidry would receive at distribution. Instead, Buzbee Defendants told Guidry he had no choice. Guidry was vulnerable. He had lost his job as a result of his injury, he was financially destitute, his marriage had failed, and he was struggling with addiction. Relying on his lawyers, Guidry accepted.

2. When the settlement funds were disbursed, Guidry was stunned to receive only $5,123.19. The Buzbee Defendants had taken 98% of Guidry's final disbursement and 74% of his

overall settlement. The Buzbee Law Firm deducted $53,000.00 in fees and $266,876.81[1] in "expenses" including: $90,920.33 for expert witness fees; $5,935.01 for postage and copies; $9,763.20 for more copies; $9,493.05 for attorney travel expenses; and, adding insult to injury, $150.00 for "closing" fees. Moreover, the Buzbee Defendants deducted $25,723.42 in fees and expenses for a referring attorney who, despite promptly handing-off Guidry, claimed he accumulated $4,523.42 in expenses.

3. Worst of all, perhaps, the Buzbee Defendants charged Guidry $23,571.51 in "interest" on $85,450.00 in "loans." The Rules of Professional Conduct[2] require fairness and transparency in any financial transaction with a client. Even then, the amount of interest a lawyer can charge a client is limited. The Buzbee Defendants kept Guidry in the dark as his loans grew by 27%. This exploitative practice not only violated ethical standards, but also compounded Guidry's financial hardship and vulnerability.

4. The Buzbee Defendants breached their legal and ethical duties to Guidry. Along with John Does 1-10, the Buzbee Defendants unjustly enriched themselves at Guidry's expense. Such conduct would be unethical in a standard business transaction. It is unconscionable in an attorney-client relationship.

**PARTIES**

5. Plaintiff ADAM GUIDRY is a citizen of the State of Louisiana who resides in Lafourche Parish, Louisiana.

6. Defendant ANTHONY G. BUZBEE is a citizen of Texas who, on information and belief, resides in Harris County, Texas.

---

[1] $85,450.00 of this amount was for "loans" to Guidry and $13,635.00 was to satisfy a third-party loan Guidry had taken out for living expenses.

[2] This is true under the American Bar Association's Model Rules of Professional Conduct, the Texas Disciplinary Rules of Professional Conduct, and the Louisiana Rules of Professional Conduct.

7. Defendant ANTHONY G. BUZBEE L.P. (d/b/a The Buzbee Law Firm) is a law firm that is organized under the laws of State of Texas and that operates its principal place of business from Harris County, Texas. Upon information and belief, no members or employees of The Buzbee Law Firm's limited partnership reside in the State of Louisiana.

8. JOHN DOES 1-10 are individuals or entities whose identities are currently unknown, but who participated in, contributed to, or benefited from the wrongful actions described herein. These parties may include, but are not limited to, employees, agents, or affiliates of Tony Buzbee, The Buzbee Law Firm, or other individuals or entities involved in handling Guidry's case and settlement. Upon information and belief, JOHN DOES 1-10 are not residents of the State of Louisiana. They will be added as their identity and respective roles in the wrongful conduct described herein becomes known through discovery.

## JURISDICTION & VENUE

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Guidry is a citizen of Louisiana, Buzbee Defendants are citizens of Texas, and the amount in controversy exceeds $75,000 exclusive of costs and interest.

10. Defendants have sufficient "minimum contacts" with the State of Louisiana including: (i) Defendants contacted Guidry in the State of Louisiana for the purpose of soliciting him as their client; (ii) Defendants mailed and emailed their contract for employment of attorney to Guidry in Louisiana; (iii) Defendants insisted that Guidry sign documents in Louisiana using a notary public authorized by the State of Louisiana; and (iv) Defendants committed acts of commission and omission in the State of Louisiana including by breaching duties owed to Guidry while unjustly enriching themselves.

11. Venue in this District is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District.

## FACTS

12. Tony Buzbee is a relentless self-promoter. The Buzbee Defendants rely on Tony Buzbee's quasi-celebrity status to lure Louisiana residents, such as Guidry, to The Buzbee Law Firm. Tony Buzbee draws attention to himself and his Firm by representing and suing celebrities, by broadcasting his wealth on social media, and, recently, by parking a WWII tank in front of his home in an affluent Houston neighborhood.

13. In 2020, Guidry was referred to the Buzbee Law Firm. Guidry had been severely injured while working aboard the General Eisenhower.

14. In February 2020, The Buzbee Law Firm filed suit against Callan Marine, Ltd. ("Callan Marine"), the owner of the General Eisenhower.[3]

15. Despite initially valuing Guidry's claim at $1 million, the Buzbee Defendants coerced Guidry into settling his case for less than one-third of that amount. In doing so, the Buzbee Defendants failed to inform Guidry of his options including the implications of settlement versus trial. The Buzbee Defendants concealed critical information from Guidry about skyrocketing expenses and the paltry amount Guidry would receive upon settlement. Relying on his lawyers, Guidry settled for $325,000.00. When these funds were distributed, Guidry received $5,123.19. The Buzbee Defendants kept Guidry uninformed and exploited his vulnerability to unjustly enriched themselves.

16. Based on information and belief, Buzbee Defendants have a pattern of using these predatory practices against their clients.

17. Buzbee represented Guadalupe Garza, who was injured while working on a vessel owned by Callan Marine. Buzbee sued Callan Marine in Nueces County, Texas. Under federal

---

[3] *See Adam Paul Guidry v. Callan Marine Ltd.*, 2020-13178, 270th Dist. Court of Harris County, Tex. (Feb. 27, 2020) (the "Texas Lawsuit").

4

law, Garza was entitled to receive maintenance and cure payments. According to court filings, Callan Marine was instructed to make maintenance and cure payments for Garza to The Buzbee Law Firm, but Garza never received the payments. *See Garza v. Callan Marine, Ltd.*, 2020CCV-61002-3, Nueces County, Tex. Callan Marine subpoenaed records from the Buzbee Law Firm to find out where the payments went. Rather than providing records in defense of their actions, the Buzbee Defendants opposed the subpoena.

18. At a hearing in the *Garza* case, Callan Marine's counsel stated that: (a) other Buzbee clients have reported not receiving maintenance and cure paid to The Buzbee Law Firm; (b) according to records, Buzbee Defendants deposited maintenance and cure payments into its operating account rather than its trust account; and (c) The Buzbee Law Firm apparently repackages maintenance and cure payments intended to provide living expenses for injured workers into loans which must be repaid with interest.

19. A similar case illustrates a pattern. In *Thompson v. Buzbee*, the Buzbee Law Firm allegedly misappropriated maintenance and cure payments owed to Matthew Ray Thompson Jr., a deckhand injured when his vessel collided with another. Like Guidry, Thompson alleges he was kept in the dark as the Buzbee Law Firm ran up expenses including high interest "loans" to Thompson. *See Thompson v. Buzbee*, Civ. Action No. 2:24-cv-02827, E.D. La. Dec. 9, 2024.

20. In another case, Callen Marine moved to designate Buzbee, The Buzbee Law Firm, and Chris Leavitt (an attorney at The Buzbee Law Firm) as responsible third-parties for maintenance and cure that Callen Marine paid but its client, Laquille Tyner, never received. *See Tyner v. Callan Marine, Ltd.*, 2020CCV-61393-2, Nueces County, Tex. In its motion, Callan Marine stated:

> In connection with these contested allegations, but in compliance with its obligations under the [Jones] Act, Defendant, Callan paid maintenance and cure payments to the Anthony G. Buzbee, LP (the "Buzbee Firm"). These funds, which even included some of Mr. Tyner's unearned advances, were

5

paid to the Buzbee Firm because that was following their demand. Callan was unaware that they were not getting the credit that was due or that these payments were being converted by the Buzbee firm to appear as tokens of their own generosity. It is clear that Mr. Tyner alleges in his pleading that he did not receive all funds he thought were due from Callan and that he was harmed by the conduct. What Mr. Tyner did not know was that it was his own lawyers that were intercepting the funds and that his own attorney failed to place them in an IOLTA account. Even worse, these same attorneys have attempted to conceal their own shameful conduct and transform it into a larger damage award for their client. It was the conduct of the Responsible Third Parties that created the lawyer induced disappointment of Mr. Tyner in his employer Callan. It was these same lawyers, and this law firm, who failed to protect said funds in an IOLTA account or distribute them properly to Mr. Tyner.

21. In *Haywood v. Univ. of Pittsburgh*, a federal court invalidated Buzbee's referral agreement as "invalid as a matter of public policy." No. 11-1200, 2012 U.S. Dist. LEXIS 179045, at *2.

22. In *In re Lowe's Home Ctrs., LLC*, Buzbee was found to be filing "venue pleadings and [his client's] affidavit" was "at best, incorrect, and at worst, fraudulent." 531 S.W.3d 861 (Tex. App. 2017). To avoid consequences, Buzbee unilaterally nonsuited the case and refiled it elsewhere.

23. Tony Buzbee's misconduct apparently is not limited to client finances. According to a news report less than a month ago, Tony Buzbee flew into a fit of rage and physically assaulted a client that he was representing in a divorce. The client alleges that after Buzbee assaulted her in public, his focus became concealing the assault rather than protecting her interests in the divorce action.[4]

---

[4] *Attorney Repping Alleged Victims Sued for Assault*, Nov. 21, 2024, https://www.tmz.com/2024/11/21/diddy-attorney-tony-buzbee-sued-accused-of-assault/ ("[S]he is alleging she was in a public place when Buzbee saw her, flew into a 'fit of rage' and allegedly pushed a champagne flute into her face, chipping her tooth. She says she has both medical and dental records to prove her injuries. . . . The woman's lawyer, Jeremy Bohrer, tells TMZ, 'Tony Buzbee is a hypocrite. There is nothing worse than when a black hat masquerades as a white hat.'").

6

## CAUSES OF ACTION

### COUNT I: BREACH OF FIDUCIARY DUTIES

24. Guidry incorporates the preceding paragraphs by reference, as if restated fully herein.

25. Guidry had an attorney-client relationship with Buzbee Defendants. As his attorneys, Buzbee Defendants owed Guidry duties of loyalty and care including to act in his best interests, to keep him informed, to advise him concerning options, to safeguard his funds, to put his interests above their own, and to provide competent representation.

26. Buzbee Defendants breached these duties to Guidry including by failing to keep him informed regarding his litigation; failing to advise him concerning his options; misleading him concerning the value of his claim; failing to manage expenses reasonably in relation to the value of his claim; charging him excessive interest on advances; and claiming a grossly excessive portion of Guidry's settlement for themselves.

27. Buzbee Defendants' acts, omissions, and breaches have damaged Guidry in an amount that will be proven at trial.

### COUNT II: UNJUST ENRICHMENT

28. Guidry incorporates the preceding paragraphs by reference, as if restated fully herein.

29. Buzbee Defendants, along with John Does 1-10, intentionally and/or negligently exploited their position of trust and authority as Guidry's attorneys to unjustly enrich themselves at Guidry's expense. Without limitation, the Buzbee Defendants failed to keep Guidry informed during the representation, failed to advise him of his options, and failed to disclose to him the ramifications of settlement versus trial. The Buzbee Defendants denied Guidry opportunities to approve or reject costly experts; inflated and concealed expenses that were not reasonable given

7

the value of Guidry's settlement; and failed to reasonably manage, protect, and preserve Guidry's funds. Additionally, the Buzbee Defendants overcharged Guidry by running up expenses and charging excessive interest on loans.

30. John Does 1-10 are individuals or entities whose identities are currently unknown but who participated in, contributed to, or benefited from the wrongful actions described herein, including the acts and omissions that led to the unjust enrichment of themselves and the Buzbee Defendants.

31. A claim for unjust enrichment requires proof of five elements: (1) an enrichment of the defendant; (2) an impoverishment of the plaintiff; (3) a causal connection between the enrichment and the impoverishment; (4) an absence of justification or cause for either the enrichment or the impoverishment; and (5) the lack of any other remedy at law. *See Moroux v. Toce*, 06-831 (La. App. 3 Cir. 11/02/06), 943 So. 2d 1263, 1273. The Buzbee Defendants and John Does 1-10 were enriched by appropriating Guidry's settlement funds, inflating and concealing expenses, and imposing excessive interest and fees on loans for living expenses. Guidry was correspondingly impoverished by these actions, as these funds, intended to support his recovery, were unjustly diverted for the benefit of the Buzbee Defendants.

32. There is no justification or cause for attorneys using concealment and deceit to enrich themselves while impoverishing their client. Guidry lacks an adequate remedy at law because, among other things, the Buzbee Defendants violated fiduciary duties that do not exist in traditional contract claims.

33. As a direct result of their intentional and/or negligent acts and omissions, Buzbee Defendants and John Does 1-10 wrongfully obtained financial benefits to which they were not entitled. Their unjust enrichment was at the expense and impoverishment of Guidry.

34. Guidry seeks restitution and an award of damages in an amount, to be proven at trial, sufficient to disgorge improper financial benefits obtained by the Buzbee Defendants and John Does 1-10 and to compensate Guidry for his losses.

### COUNT III: NEGLIGENCE

35. Guidry incorporates the preceding paragraphs by reference, as if restated fully herein.

36. Buzbee Defendants and John Does 1-10 negligently failed to exercise reasonable care and skill of competent attorneys while representing Guidry. Without limitation, the Buzbee Defendants failed to manage Guidry's case and its expenses; failed to keep Guidry informed about material aspects of his case; failed to include Guidry in decisions concerning expenditures on experts; failed to advise Guidry of his options concerning settlement versus trial; and failed to disclose to Guidry the impact excessive expenses would have on his recovery.

37. Buzbee Defendants and John Does 1-10 further failed to reasonably manage, safeguard, and protect Guidry's interest in future settlement proceeds by inflating and/or failing to control expenses in a reasonable manner in relation to the value of Guidry's case.

38. As a direct and proximate result of the negligent acts and omissions of Buzbee Defendants and John Does 1-10, Guidry suffered financial harm and other damages to be proven at trial.

39. Guidry seeks an award that will fully compensate him for the harm caused by the negligent acts and omissions of Buzbee Defendants and John Does 1-10.

### REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Adam Guidry prays for judgment against Defendants Anthony G. Buzbee, Anthony G. Buzbee L.P. (d/b/a The Buzbee Law Firm), and JOHN DOES 1-10 in the form of a judgment against Defendants on all counts and an award

in excess of $250,000 including disgorgement of unjustly obtained benefits, actual damages, statutory damages, punitive damages, reasonable and necessary attorney and expert fees, court costs, and all other relief the Court may deem appropriate.

Dated: December 13, 2024.

                                Respectfully submitted,

                                ADAM GUIDRY

                                By:  *Timothy W. Porter*
                                    Tim Porter, La. Bar No. 24863

Kelley Berry (Lead Counsel)
(Pro Hac Pending)
BERRY & MUNN, P.A.
P.O. Drawer 768
201 Downing Street
Hazlehurst, MS 39083
(601) 894-4150
kberry@berrymunnpa.com

Tim Porter, La. Bar No. 24863
PORTER & MALOUF, P.A.
825 Ridgewood Road
Ridgeland, MS 39157
(601) 957-1173
tim@portermalouf.com