UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ADAM GUIDRY, *Plaintiff,* v. ANTHONY G. BUZBEE and ANTHONY G. BUZBEE LP (d/b/a THE BUZBEE LAW FIRM) and, JOHN DOES 1-10 *Defendants*. | CIVIL ACTION NO. 2:24-CV-02873 JUDGE JANE TRICHE MILAZZO MAG. JUDGE MICHAEL NORTH SECTION "H" (5) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR *FORUM NON CONVENIENS***

Plaintiff Adam Guidry respectfully submits this memorandum in opposition to Defendants' Motion to Dismiss for *Forum Non Conveniens* (ECF No. 4).

**PRELIMINARY STATEMENT**

Defendants Anthony Buzbee and his law firm are lawyers who, after being associated as counsel via an undisclosed referral agreement, defrauded their client, by devising a scheme to reap approximately *over 97%* of the client's settlement award. Now again, Defendants are attempting to take advantage of their former client by invoking a "forum selection clause" in client's original legal services agreement with Hodge Law Firm; however, Defendants have no standing to enforce provisions of a contractual agreement to which they were not a party. More critically, Defendants cannot benefit from a forum selection clause that was unknowingly foisted upon their vulnerable client and applicable to different causes of action than those brought in this lawsuit. Plaintiff

alleges that Defendants breached their fiduciary duties to and defrauded Plaintiff by misleading him about the value and status of his personal injury case, usurping his right to decide to settle, and artificially inflating expenses to retain *over 97%* of Plaintiff's recovery. Defendants have not, and cannot carry their burden to establish that Galveston, Texas, a location relevant only to the law firm from whom the matter was referred, should be the forum to resolve this case. Despite the relevant fact that the clause selecting the predecessor law firm's hometown to resolve contractual disputes was imposed on Plaintiff without his knowledge and consent, Defendants, who were not parties to the agreement, are not even located in the forum, but instead, operate in Houston, Texas.[1]

Nevertheless, it is clear that the legal service agreement's plain language does not cover these claims of affirmative fraud. Finally, it is fair and consistent with public policy to conduct this case in Louisiana, where Defendants directed their attorney-advertising and have taken advantage of numerous clients through illicit schemes to misappropriate monetary damages owed to their clients. The Court should deny Defendants' motion to dismiss.

## BACKGROUND

This is the latest case against attorney Anthony Buzbee and his law firm based on their exploitation of vulnerable clients. Plaintiff, a licensed ship captain, was severely injured while working aboard the General Eisenhower ship. Compl., ECF No. 1, ¶¶ 1, 13. Plaintiff consulted with Hodge Law Firm, PLLC ("Hodge") of Galveston, Texas. Hodge initially valued Plaintiff's claims at $1 million, so Plaintiff hired Hodge to bring a lawsuit against the owner of the General Eisenhower. *Id.* ¶¶ 14–15. The parties then executed a Contract for Legal Services. ECF No. 4-2 (the "Contract"). The Contract included a provision entitled Governing Law (the "Forum Selection Clause") that provides: "This Contract shall be governed by the laws of the State of

---

[1] Indeed, it is unclear how "the District Courts of Galveston Texas) is convenient for anyone considering that no party to this civil action is located in Galveston.

2

Texas and any action shall be brought in the District Courts of Galveston County, Texas." Contract at 2. The Contract also contained a provision entitled "Referral or Association with additional counsel, which provides:

> Client agrees that at Attorney's sole discretion Attorney may associate this matter with another lawyer or law firm to assist in representing Client and prosecuting Client's claim(s) or cause(s) of action. The referral or association of additional attorneys will not increase the total fee owed by Client. Attorney will maintain primary responsibility.

Thereafter, Hodge associated Defendants. The terms and conditions relevant to the referral agreement have not been made available to the Plaintiff/former client.[2]

Defendants then "coerced [Plaintiff] into settling his case for . . . $325,000," less than one-third of their previously stated valuation. Compl. ¶ 15. To do so, Defendants misled Plaintiff by failing "to inform [Plaintiff] of his options including the implications of settlement versus trial." *Id*. Meanwhile, Defendants had been "conceal[ing] critical information from [Plaintiff] about skyrocketing expenses," keeping him "uninformed" to "exploit[ ] his vulnerability to unjustly enrich[ ] themselves." *Id*. Thus, when Defendants distributed to Plaintiff his portion of the $325,000 settlement, **he received a total of $5,123.19**. *Id*. Defendants purported to deduct $53,000.00 in fees and $266,876.811 in "expenses" including: $90,920.33 for expert witness fees; $5,935.01 for postage and copies; $9,763.20 for more copies; $9,493.05 for attorney-travel expenses; $25,723.42 in fees and expenses for a referring attorney; and, adding insult to injury,

---

[2] In the Memorandum in Support of the Defendant's Motion to Dismiss for Forum Non Conveniens, Defendant's claim that Plaintiff entered into a "Consent to Association of Additional Counsel" which Defendants claim "directly referred to and incorporated the terms of the Legal Services Contract" as well as "explicitly agreed to the association by Hodge of the Buzbee Defendants." ECF No. 4, ¶7. Defendant further claims that this agreement has been attached to its filing as Exhibit B. However, despite this claim, no such exhibit was attached to the Defendants' filing.

Likewise, claim that Plaintiff "consented in writing and under oath to the settlement of his claims and the disbursement of the settlement funds as specified in a Settlement Affidavit. See Exhibit 'C.'" ECF No. 4, ¶7. Yet again, no such exhibit was included in the filing.

3

$150.00 for "closing" fees. *Id.* ¶ 2. These purported expenses, incurred without Plaintiff's knowledge or consent, were objectively unreasonable, and drained away nearly the entire value of Plaintiff's legal claims. Worst of all, Defendants charged Plaintiff $23,723.42 in "interest" on $85,450.00 in "loans," without Plaintiff's knowledge and consent and in flat violation of applicable Rules of Professional Conduct. *Id.* ¶ 3; Tex. Disciplinary R. Prof'l Conduct 1.08(a) (requiring fairness and transparency in any financial transaction with a client).

On December 13, 2024, Plaintiff sued Defendants alleging that their illicit conduct breached Defendants' fiduciary duties to Plaintiff, caused them to be unjustly enriched at Plaintiff's expense, and constituted negligence. Compl. ¶¶ 24–39. On January 14, 2025, Defendants moved to dismiss this action for *forum non conveniens*, Mot. to Dismiss, ECF No. 4, claiming, in conclusory fashion, that Plaintiff's filing of this lawsuit in the Eastern District of Louisiana is contrary to a "valid and enforceable forum selection clause" and requested dismissal without prejudice, Mem. in Supp. of Mot. to Dismiss, ECF No. 4-1 at 1–2 ("Br.").

## ARGUMENT

The Court should deny Defendants' motion to dismiss for *forum non conveniens*. As a preliminary matter, Defendants lack standing to enforce the forum selection clause as Defendants were not a party to the legal service agreement executed between Plaintiff and Hodge Law Firm.

Defendants' lack of standing aside, the Forum Selection Clause is irrelevant to the *forum non conveniens* analysis. Defendants have failed to meet their burden of demonstrating that any of the relevant factors require this Court to deprive itself of its proper jurisdiction. Defendants have failed to carry their burden. "[I]n resolving a forum non conveniens issue, the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 827 (5th Cir. 1986) (citation and quotation

4

marks omitted). "The doctrine of forum non conveniens has always afforded great deference to the plaintiff's forum choice," *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 676 (Tex. 2007), especially when "plaintiff's chosen forum" is its "home forum," *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007).

Under Texas law,[3] a court "may not dismiss simply because it determines that another forum is superior to that chosen by the plaintiff." *Sarieddine v. Moussa*, 820 S.W.2d 837, 844 (Tex. App. 1969) (reversing the district court's dismissal based on forum non conveniens). And Texas appellate courts have cautioned that "the doctrine of forum non conveniens should be applied with caution, exceptionally, and only for good reasons." *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 711 (Tex. App. 2010) (citation omitted). As such, Defendants bear "the burden of persuasion on all elements"—private interests and public equities—"of the forum non conveniens analysis." *Velasco v. Henley Enter., Inc.*, WL 2596075, at *2 (Tex. App. Aug. 25, 2009).

## I. Defendants Lack Standing to Enforce the Forum Selection Clause.

Defendants lack standing to enforce the forum selection clause as Defendants were not a party to the legal service agreement executed between Plaintiff and Hodge Law Firm. Texas law recognizes that, "[a]s a general rule, . . . a forum selection clause cannot be invoked by a nonparty to the contract. *See G.T. Leach Builders, LLC v. Sapphire V.P., L.P.*, 458 S.W.3d 502, 524 (Tex. 2015); *Garg v. Pham*, 485 S.W.3d 91, 105 (Tex. App. 2015).

However, there are certain, specifically delineated, circumstances where a "non-signatory may be permitted to enforce an arbitration agreement or forum selection clause. *Id*.; *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (listing six recognized theories that

---

[3] For purposes of this motion, Plaintiff accepts Defendants' presumption that Texas law governs this dispute.

5

may bind non-signatories: "(1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary"). Here, Defendants have not, and cannot, demonstrate a departure from the general rule that as a non-party/ non-signatory, they have no standing to enforce the forum selection clause.

If, however, the Court were to find that Defendants do have standing to enforce the forum selection clause, the controlling question is whether the claims subject to this lawsuit fall within the scope of the clause. They do not. "To determine whether a claim falls within the scope of a forum-selection clause, a court looks to the language of the contract." *Wellogix, Inc. v. SAP Am., Inc.*, 58 F. Supp. 3d 766, 777 (S.D. Tex. 2014); *see also Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 432 (Tex. 2017). Here, it is clear that the claims subject to this lawsuit are outside the scope of the legal services agreement, and therefore, the forum selection clause. The legal services agreement executed by Plaintiff and Hodge provides as follows:

> Purpose of Contract - Client employs the attorney on a contingency basis to prosecute all of Client's claims **against Client's insurance company and all responsible parties related to Client's property damage claim( s) including but not limited to breach of contract, bad faith, violations of the Insurance Code, DTPA, etc.** Client understands that this contract is for those claims only and only related to the property damage claim(s) and that, if any other legal services are necessary or wanted, Client agrees to negotiate and execute a separate legal Contract with Attorney. Client understands that Attorney will not represent them in any other legal matter and will not act as their attorney on any other matter beyond Client's property damage claim.

(emphasis added). Thus, the scope of the agreement pertains only to the claims against the insurer and/or those parties responsible for the property damage.[4] It does not contemplate or reach Defendants' fraudulent and tortuous conduct which are the subject of this civil action.

---

[4] *Expressio unius est exclusio alterius.*

6

## II. Defendants Failed to Demonstrate an Enforceable and Applicable Forum Selection Clause and That the Equities Compel Dismissal Based on *Forum Non Conveniens*.

Defendants have failed to show that the Forum Selection Clause is valid and enforceable under Texas law or, even if it is, that Plaintiff's claims fall under the clause's narrow scope. And, Defendants have otherwise failed to show that the private interests and the public equities require the Court to grant their motion to dismiss for *forum non conveniens*.

a. The Forum Selection Clause is Invalid Because it Was Not Bargained-For.

Defendants are mistaken that the Contract's Forum Selection Clause is outcome-determinative for the *forum non conveniens* analysis. Br. at 3–4. A forum selection clause is only relevant if that clause is "valid"—*i.e.*, a clause specifically "bargained for by the parties" to "protect their legitimate expectations and further vital interests of the justice system." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. Of Texas*, 571 U.S. 49, 63 (2013) (cleaned up). The Contract's Forum Selection Clause is invalid and therefore irrelevant because it was not bargained-for, certainly does *not* protect Plaintiff's legitimate expectations, and in fact undermines justice.

The Forum Selection Clause was not bargained-for. For a bargain to occur, both parties must have some modicum of negotiating power and understanding of the consequences of the agreement. *See Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 699 (Tex. 2000). But, as Plaintiff has alleged, Defendants eschewed any veil of actual negotiation and presented Plaintiff with the boilerplate, egregiously one-sided Contract. *See* Compl. ¶¶ 1, 12–14.. Plaintiff, an unsophisticated and vulnerable client, took it without knowing any better. *See id*.

In this predatory context, the Forum Selection Clause was not bargained-for and is therefore invalid. Plaintiff was not "a sophisticated and experienced client who vigorously negotiated the [Contract] with his attorney"—indeed, Plaintiff "is an unsophisticated and

7

inexperienced individual whose attorney presented an already drafted agreement." *Falk & Fish, LLP v. Pinkston's Lawnmower & Equip., Inc.*, 317 S.W.3d 523, 529 (Tex. App. 2010). And critically, there is no evidence that Defendants explained the Forum Selection Clause to Plaintiff. *Id.* ("There is nothing in the record to indicate the agreement was negotiated."). Plaintiff's lack of awareness or understanding of the Contract—and the Forum Selection Clause in particular—is especially concerning in the attorney-client context. *Id.* ("Contracts between attorneys and their clients negotiated during the existence of the attorney-client relationship."); *Keck, Mahin & Cate*, 20 S.W.3d at 699 (attorney-client contracts "are closely scrutinized" because "there is a presumption of unfairness and invalidity attaching to such contracts"). As a result, the Court cannot consider the Forum Selection Clause in its *forum non conveniens* analysis.

This outcome is no surprise. Defendants' predatory conduct with respect to vulnerable Plaintiff is just the latest manifestation of Defendants' years-long insidious scheme. For example, a Louisiana court found that Defendants took advantage of their "unequal bargaining position" when contracting with vulnerable clients, holding that Defendants' "arbitration provision was unconscionable" "[d]ue to the lack of mutuality." *Lafleur v. Law Offices of Anthony G. Buzbee, P.C.*, 960 So. 2d 105, 113 (La. App. 2007). And Defendants have engaged in the same and similar nefarious schemes to deprive clients of monies to which only the clients are entitled, to impose usurious interest rates through pernicious loans, and to misappropriate most of their clients' settlement money. Compl. ¶¶ 16–23.[5]

---

[5] *See, e.g.*, *Haywood v. Univ. of Pittsburgh*, No. 11-1200, 2012 U.S. Dist. LEXIS 179045, at *2 (invalidating Defendants' referral agreement "as a matter of public policy"); *In re Lowe's Home Ctrs., LLC*, 531 S.W.3d 861 (Tex. App. 2017) (accusing Defendants of filing "pleadings and [a client] affidavit" that were "at best, incorrect, and at worst, fraudulent"); *Garza v. Callan Marine, Ltd.*, 2020CCV-61002-3, Nueces County, Tex. (alleging misappropriation of client payments against Defendants); *Thompson v. Buzbee*, Civ. Action No. 2:24-cv-02827, E.D. La. Dec. 9, 2024 (same); *Tyner v. Callan Marine, Ltd.*, 2020CCV-61393-2, Nueces County, Tex. (stating that Defendants "demand[ed]" it "pa[y] client funds to Defendants" and that Defendants "were intercepting the funds" and 'have attempted to conceal their own shameful conduct").

b. <u>Plaintiff's Claims Fall Outside the Forum Selection Clause's Narrow Scope.</u>

Even if the Forum Selection Clause were valid (it is not), the clause cannot be enforced against Plaintiff's claims because those claims fall outside of its narrow scope.

"When deciding whether to enforce a forum-selection clause, a court must determine whether the claims fall within the scope of the clause." *Black*, 551 S.W.3d at 352. This is a "common-sense" determination, *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 884 (Tex. 2010), considering "the language of the clause and the nature of the claims that are allegedly subject to the clause," *Deep Water Slender Wells, Ltd.*, 234 S.W.3d at 688.

The Forum Selection Clause provides, "[t]his Contract shall be governed by the laws of the State of Texas and any action shall be brought in the District Courts of Galveston County, Texas." Contract at 2. The only reasonable reading of this clause is that the clause narrowly captures only "any action" ***arising out of*** the Contract. Defendants acknowledge this natural reading of the clause by contending, conclusory and incorrectly, that "Plaintiff's claims ***arise out of*** the contracts." Br. at 2 (emphasis added). And in all events, any ambiguity in the Contract must be read against the drafter Defendants. *See Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990).

The Forum Selection Clause therefore must be narrowly construed. That clause "does not contain the broader terms 'in connection with' or 'relating to', which, according to the Fifth Circuit, distinguish a broad [forum selection] clause from a narrow clause which uses only the term 'arising out of' or 'arising under' the agreement." *Coffman v. Provost Umphrey L. Firm, L.L.P.*, 161 F. Supp. 2d 720, 725 (E.D. Tex. 2001) (citation omitted and emphasis added), *aff'd sub nom.*, 33 F. App'x 705 (5th Cir. 2002). Any natural reading of "arising out of" the Contract is one which

9

"encompass[es] claims arising solely under the agreement." *I.D.E.A. Corp. v. WC & R Ints., Inc.*, 545 F. Supp. 2d 600, 606 (W.D. Tex. 2008).[6]

Defendants are wrong that Plaintiff's claims "arise out of" his contract with Defendants. Plaintiff does not assert a breach-of-contract cause of action. Plaintiff's claims—breach of fiduciary duty, unjust enrichment, and negligence—are "completely independent of the contract and [can] be maintained without reference to a contract," and are therefore outside of the Forum Selection Clause's narrow scope. *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 248–50 (5th Cir. 1998). That is because "[n]one of these [claims'] elements depends, as a legal matter, on the agreement between" Plaintiff and Defendants. *Id.* at 251. In this context, "the fact that an agreement exists between [Plaintiff and Defendants] is legally irrelevant and indeed can be treated as nonexistent as far as" Plaintiff's claims are concerned. *Id*. A close examination of the elements governing Plaintiff's causes of action proves the point.

**Fiduciary-Breach Claim.** The attorney-client "relationship is fiduciary in nature." *Keck, Mahin & Cate*, 20 S.W.3d at 699. To state a fiduciary-breach claim, Plaintiff need only allege that it had an attorney-client relationship with Defendants and that Defendants' conduct violated the fiduciary duties inherent to that relationship. Plaintiff sufficiently alleges there was an attorney-client relationship with Defendants absent any contract. *See* Compl. ¶¶ 24–27 (alleging breach of fiduciary duties in relation to the attorney-client relationship and without any reference to the Contract); *Wesco v. Cap. One Auto Fin*., No. 3:24-civ-2276 (D)(BW) 2024 WL 5358445, at *1 (N.D. Tex. Dec. 9, 2024) (laying out elements for breach of fiduciary duty under Texas law, none of which mention or involve a related or underlying contract).

---

[6] The Texas Supreme Court has "borrowed from its arbitration jurisprudence" for guidance on forum-selection clauses because an arbitration clause is "another type of forum-selection clause." *In re Lisa Laser USA, Inc*., 310 S.W.3d at 884; *see also Deep Water Slender Wells, Ltd*., 234 S.W.3d at 694 ("[T]here is no meaningful difference between a non-arbitration forum-selection clause and an arbitration clause.").

10

And Plaintiff sufficiently alleges that Defendants breached their fiduciary duties to Plaintiff based on Defendants' "failure to deliver funds belonging to the client, placing personal interests over the client's interests, improper use of client confidences, taking advantage of the client's trust, engaging in self-dealing, and making misrepresentations." *Williams on behalf of Blackland Construction, Inc. v. Gottfried*, No. 03-22-00234-cv, 2024 WL 1745657, at *3 (Tex. App. Apr. 24, 2024) (citation and quotation marks omitted); *see* Compl. ¶ 26. Because "the existence of the contract . . . [is] unnecessary to establish" Defendants' violations of their "duties of loyalty and care," Plaintiff's fiduciary-breach claim falls outside of the Forum Selection Clause's scope. *Ford*, 141 F.3d at 251.

*Unjust Enrichment Claim.* Under Texas law, unjust enrichment is an "independent cause of action" that "occurs when a person has wrongfully secured a benefit or has passively received on which it would be unconscionable to retain." *Eun Bok Lee. v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App. 2013). An unjust enrichment claim does not rely on the presence of a contract; instead, it is an "implied or quasi-contractual obligation to return benefits." *Tex. Carpenters Health Ben. Fund v. Phillip Morris, Inc.*, 21 F. Supp. 2d 664, 678 (E.D. Tex. 1998). Plaintiff's allegations that Defendants "exploited their position of trust and authority as [his] attorneys" to "appropriate[e] his] settlement funds, inflat[e] and conceal[ ] expenses, and impos[e] excessive interest and fees on loans for living expenses" do not relate to the Contract but stem wholly from Defendants' "exploit[ation of] their position of trust and authority as [plaintiff's] attorneys." Compl. ¶¶ 29, 31.

*Negligence Claim.* As described above, the attorney-client relationship exists with or without a contract. Under Texas law, clients may "sue their former attorneys for professional misconduct," and these "claims typically sound in negligence." *Forshee v. Moulton*, 694 S.W.3d 803, 809 (Tex. App. 2024). Texas law specifically separates "fundamentally negligence-based

11

claims" from "breach of contract" claims, prohibiting the former from being "recast" as the latter. *Id.* Instead, "[t]he gravamen of a professional negligence complaint focuses on the quality or adequacy of the attorney's representation." *Id.* Because Plaintiff's claims do "not arise out of . . . his agreement with the [Defendants] and [therefore are] not subject to the agreement's arbitration clause," *Ford*, 141 F.3d at 252, this Court should deny Defendants' motion*, see* Compl. ¶¶ 36–37.

Defendants do not and cannot defend their untenable contrary position. Defendants' assertion that "[a]ll of Plaintiff's claims arise out of the contracts attached hereto," is advanced without any citation to law or explanation of how claims of breach of fiduciary duty, unjust enrichment, and negligence "arise out of" the Contract. Br. at 2.

Defendants position contradicts well-settled Texas law. Plaintiff's claims arise under the "general obligations imposed by law" given Defendants' fiduciary duties and the attorney-client relationship. *Int'l Profit Assocs., Inc.*, 274 S.W.3d 672 (Tex. 2009). As discussed above, a close "[e]xamin[ation of] the legal elements of [Plaintiff's] claim[s]" demonstrates that "the existence of the contract between the plaintiff and defendants [is] unnecessary to establish" those claims. *Ford*, 141 F.3d at 251. Because each of Plaintiff's claims "could be maintained without reference to the contract," they are indisputably outside of the Forum Selection Clause's narrow "arising under" scope. *Id.* at 250–51 (citation and internal quotation marks omitted). The clause is not applicable to Plaintiff's claims and therefore cannot be enforced in this case.

    c. <u>Defendants Have Failed to Show any *Forum Non Conveniens* Factor Weighs in their Favor</u>.

Defendants have failed to show, as is their burden, that the public equities and private interests—"includ[ing] the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance from willing witnesses" and "the burden imposed upon citizens of the state, the burden on the trial

court, and the generalized interest in having localized controversies decided in the jurisdiction in which they arose"—"so strongly favor" Defendants that justice requires trying the case in another forum. *Ashrat v. Choudhry*, 2021 WL 2948575, at *3 (Tex. App. June 30, 2021).

To meet their burden, Defendants must "provide enough information to enable the court to balance the competing interests." *Ashrat*, 2021 WL 2948575, at *3. Defendants' conclusory assertion that Plaintiff "waived" all private factors by entering the Contract, Br. at 2, is both untrue and beside the point. "Unsubstantiated, conclusory allegations in a motion or in argument by counsel are insufficient" to "allow[ ] the trial court to balance the *forum non conveniens* factors and determine whether they weigh strongly in favor of trying the case in another forum." *Seung Ok Lee v. Ki Pong Na*, 198 S.W.3d 492, 495 (Tex. App. 2006) (finding trial court "abused its discretion in dismissing the case based on *forum non conveniens*).

All relevant factors favor this Court's retention of jurisdiction. The "ease of access to sources of proof" is stronger in Louisiana, where Plaintiff is a resident and where much of both parties' physical, documentary, and testimony evidence will be located. *See* Compl. ¶ 5. Defendants have undisputedly availed themselves of the benefits of Louisiana and are subject to its law. They operate extensively in Louisiana, solicit clients in Louisiana, send business mailings to Louisiana residents, "committed acts of commission and omission in the State of Louisiana including by breaching duties owed to" Plaintiff, and thus would not be prejudiced by litigating this matter in Louisiana federal court.[7] Compl. ¶¶ 5, 10. Indeed, Defendants are presently defending themselves from other claims brought by other aggrieved former clients before other Louisiana courts. *See, e.g.*, *Lafleur*, 960 So.2d at 109 (accusing Defendants of "settling [client]'s

---

[7] Louisiana's long arm statute provides for personal jurisdiction over nonresidents who "[c]aus[ed] injury or damage in this state by an . . . act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state." L.A.R.S. 13:3201; *see Koster v. (American) Lumbermens Mut. Cas. Co*., 330 U.S. 518, 527 (1947).

13

maritime claim without the proper authority . . . negotiating an inadequate settlement; an/or failing to obtain authority for and payment of" certain expenses). Given the parties' close ties to Louisiana, the costs of compelling witnesses will also be comparatively lower in this Court.

Importantly, Defendants purposefully hide the true intention behind their motion to dismiss—if the Court grants Defendants motion based on the Forum Selection Clause, this outcome might bolster Defendants' weak argument that Texas law governs (and therefore that Texas statutes of limitations apply to) Plaintiff's claims. *See, e.g.*, Tex. Civ. Prac. and Remedies Code § 16.004(a)(5) (four-year statute of limitations for breach of fiduciary duty claims); *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 869 (Tex. 2007) (two-year statute of limitations for unjust enrichment claims); *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988) (two-year statute of limitations for professional negligence claims). The Court cannot allow Defendants to manipulate the judiciary in an attempt to imbue their meritless defenses with false credibility. *See Tullis v. Georgia-Pacific Corp.*, 45 S.W.3d 118, 131 (Tex. App. 2000) (finding that alternate forum would not afford an "adequate remedy" because it would "not permit litigation on the subject matter of the dispute" given the expiration of the "one-year statute of limitations").

Defendants have not carried their burden and the Court must deny their motion to dismiss.

## II.     Public Interest Factors Strongly Favor Hearing This Case In This Court.

Even if the Forum Selection Clause is found to be enforceable and applicable to Plaintiff's claims (it is not), that fact alone is not outcome determinative. The Court must still "consider . . . public interests." *Atl. Marine Const. Co., Inc.*, 571 U.S. at 51. And Defendants have not carried their burden to show that those factors mandate that this Court refuse to retain jurisdiction. *See Gulf Oil Corp.*, 330 U.S. at 508.

Contrary to Defendants' contention, Br. at 5, Louisiana has a substantial interest in maintaining a case concerning both a Louisiana resident, Compl. ¶ 5, and an entity conducting

14

business in Louisiana, *id*. ¶ 10. By advertising and soliciting business in Louisiana, Defendants have purposely availed themselves of Louisiana law and industry and cannot now claim to have no "connection" to the state. *See id.* ¶ 12; Br. at 5; *see infra* p. 13. Louisiana jurors have a substantial interest in resolving disputes arising from business conducted in Louisiana harming Louisiana residents. That is particularly so when Plaintiff's claims arise from Defendants' scheme that repeatedly reaches into Louisiana to find and harm vulnerable clients. *See infra* p. 8. Further, the superior resources of a federal court are well-suited to avoid any "[a]dministrative difficulties" or "burden[s] imposed on the citizens of the state and the trial court" that may arise from evaluating multiple claims against multiple defendants. *Gulf Oil Corp.*, 330 U.S. at 508; *Garden City Boxing Club, Inc. v. 3425 Club, Inc.*, 2009 WL 930460, at *2 (Tex. App. Apr. 8, 2009).

Defendants do not and cannot respond to this reality and, as such, have "failed to meet their burden of persuasion with respect to the factors elucidated" in *Gulf Oil Corp.* 330 U.S. at 508; *see Seung Ok Lee. Velasco*, 2009 WL 2596075, at *3 (affirming denial of motion to dismiss); *see also In re Williams Gas Processing Co.*, 2008 WL 257275, at *3 (Tex. App. 2008) (same). For this additional reason, the Court should deny Defendants' motion to dismiss for *forum non conveniens*.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion to dismiss for *forum non conveniens*.

DATED: February 18, 2025

        By:   */s/Timothy W. Porter*
Timothy W. Porter, La. Bar No. 24863
PORTER MALOUF, P.A.
825 Ridgewood Road
Ridgeland, MS 39157
Telephone: (601) 957-1173
Facsimile: (601) 957-7366
tim@portermalouf.com

OF COUNSEL:

Kelley Berry
(Pro Hac Pending)
BERRY & MUNN, P.A.
P.O. Drawer 768
201 Downing Street
Hazlehurst, MS 39083
(601) 894-4150
kberry@berrymunnpa.com

Timothy W. Porter, La. Bar No. 24863
PORTER MALOUF, P.A.
825 Ridgewood Road
Ridgeland, MS 39157
Telephone: (601) 957-1173
Facsimile: (601) 957-7366
tim@portermalouf.com

## **CERTIFICATE OF SERVICE**

I, Timothy W. Porter, certify that the above and foregoing Pleading was filed electronically via the Court's ECF system, which sent notification of such filing to all counsel of record.

This, the 18th day of February, 2025.

*/s/ Timothy W. Porter*
Timothy W. Porter
